T.C. Memo. 2017-17

UNITED STATES TAX COURT

STEWART THOMAS OATMAN AND SHIRLEY ANN OATMAN, Petitioners
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13370-14.                    Filed January 17, 2017.

Stewart Thomas Oatman and Shirley Ann Oatman, pro sese.

Paulmikell A. Fabian and Catherine G. Chang, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge:  Respondent determined a deficiency of $7,487 in

petitioners' Federal income tax and an accuracy-related penalty pursuant to section

[*2] 6662(a) of $1,497 for the 2011 taxable year.[1]  In an amendment to answer respondent asserted an increased deficiency of $9,237 and a proportionate increase in the penalty.

The issues for decision, for 2011, are as follows:  (1) whether petitioners are entitled to a deduction for the unreimbursed employee business expenses they claimed on their Schedule A, Itemized Deductions; (2) whether petitioners are entitled to a deduction for Schedule A charitable contributions in an amount greater than respondent allowed; (3) whether petitioners are entitled to a deduction for the net loss they claimed on their Schedule C, Profit or Loss From Business; (4) whether petitioners are entitled to a deduction for the rental real estate loss they claimed on their Schedule E, Supplemental Income and Loss, in an amount greater than respondent allowed; and (5) whether petitioners are liable for the accuracy-related penalty.  We resolve all issues in favor of respondent.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Some monetary amounts are rounded to the nearest dollar.

[*3]                      FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California at the time the petition was filed with the Court.

Petitioners prepared and filed timely (without the assistance of a paid preparer) a joint Form 1040, U.S. Individual Income Tax Return, for the 2011 taxable year (joint return). On the joint return petitioners reported wages of $124,756 ($33,438 of wages paid to Mr. Oatman from his employment with Inglewood United as a teacher and $91,318 of wages paid to Mrs. Oatman from her employment with Coram Specialty Infusion Services, Inc., as a registered nurse). Petitioners attached to the joint return a Schedule A, a Schedule C, and a Schedule E. Petitioners claimed $50,474 of itemized deductions on their Schedule A, a $7,597 deduction for a net loss for a construction building contractor consulting business operated by Mr. Oatman on their Schedule C, and a $24,473 deduction for a rental real estate loss for certain property on their Schedule E.

As relevant here, on their Schedule A petitioners claimed a deduction of $7,950 for charitable gifts by cash or check and a deduction of $8,964 for unreimbursed employee business expenses. The details of petitioners' unreimbursed employee business expenses were shown on a Form 2106,

[*4] Employee Business Expenses, also attached to the joint return, and those expenses consisted of $6,997 for vehicle expenses and $1,967 for meals and entertainment of Mrs. Oatman in connection with her job as a nurse.

On their Schedule C petitioners reported gross receipts of $1,180 and total expenses of $8,777. The expenses consisted of $1,240 for car and truck expenses; $1,381 for insurance; $814 for office expense; $1,680 for rent or lease of vehicles, machinery, and equipment; $1,744 for repairs and maintenance; $275 for supplies; $845 for travel; and $798 for utilities.

On their Schedule E petitioners reported $42,700 of rental income and $66,296 of total expenses for rental property in Los Angeles, California, and no rental income and $877 of total expenses for vacant lots in San Luis Obispo, California. Despite reporting that their adjusted gross income exceeded $100,000 (they reported adjusted gross income of $114,802), petitioners did not limit their Schedule E rental real estate loss deduction under section 469(i) and did not attach a Form 8582, Passive Activity Loss Limitations, to the joint return.

Following an examination of the joint return, respondent determined that the Schedule A charitable cash contribution deduction and the Schedule E rental real estate loss deduction should be partially disallowed and that the entire Schedule A deduction for unreimbursed employee expenses and the entire Schedule C net loss

[*5] deduction should be disallowed. Respondent also determined that a section 6662(a) accuracy-related penalty should be imposed. The notice of deficiency mailed to petitioners on April 17, 2014, reflects those determinations. According to the notice, petitioners "did not establish that the * * * [remaining charitable cash contributions of $4,290] were (a) contributions, and (b) paid".[2] Regarding the Schedule A and Schedule C deductions disallowed in their entirety, petitioners "did not establish that the business expense * * * was paid or incurred during the taxable year and that the expense was ordinary and necessary to" petitioners' respective businesses. Respondent disallowed $12,182 of the Schedule E rental real estate loss deduction because the activity giving rise to the deduction was passive and thus subject to the passive activity loss limitation rules of section 469(i). And respondent determined the accuracy-related penalty because petitioners' resulting underpayment of tax was attributable to "(1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement."[3]

---

[2]The parties stipulated that petitioners substantiated cash contributions in the following amounts to the following charitable organizations: (1) $485 to Los Angeles Mission; (2) $500 to Johnson C. Smith University; and (3) $2,675 to Eternal Promise Baptist Church.

[3]Subsequently, in his amended answer respondent corrected the computation

(continued...)

**[*6]** Petitioners timely petitioned this Court for redetermination of the deficiency and the penalty.[4]

---

[3](...continued)
of the allowable deduction for Schedule E passive activity losses, reducing the amount to $5,774. He also asserted that petitioners are liable for self-employment tax in the increased amount of $145, not $32 as determined in the notice of deficiency and that they are not entitled to the child and dependent care credit of $6 also determined in the notice of deficiency. The parties stipulate that petitioners' modified adjusted gross income for the 2011 taxable year was $138,452, not $114,802, which in turn results in the reduced amount of the allowable deduction for Schedule E passive activity losses. The parties also stipulate that petitioners did not report any amounts for child and dependent care on the joint return and that they are not entitled to a child and dependent care credit for the 2011 taxable year. In computing Mr. Oatman's self-employment tax, the notice of deficiency indicates that both petitioners' Social Security wages and tips from Forms W-2, Wage and Tax Statement, were erroneously taken into account. Respondent's amended answer reflects the removal of Mrs. Oatman's Form W-2 Social Security wages and tips, which results in the increased amount of self-employment tax.

[4]In their petition, in addition to disputing the determinations for the 2011 taxable year, petitioners disputed determinations for the 2012 taxable year. On July 11, 2014, the Court granted respondent's motion to dismiss this case for lack of jurisdiction insofar as it relates to the 2012 taxable year on the ground that no statutory notice of deficiency, as authorized by sec. 6212 and required by sec. 6213(a) to form the basis for a petition to this Court, had been sent to petitioners with respect to the 2012 taxable year, nor had respondent made any other determination with respect to petitioners' 2012 taxable year that would confer jurisdiction on this Court.

[*7]                                    OPINION

I.      Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Segel v. Commissioner, 89 T.C. 816, 842 (1987). This burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

But, when the Commissioner raises a new issue or an increase in the deficiency, he bears the burden of proof as to the new issue or the increased deficiency. Rule 142(a)(1); Roberts v. Commissioner, 141 T.C. 569, 575 (2013). Respondent filed an amended answer asserting an increase in the deficiency based on a revised computation of petitioners' tax liability. See supra note 3. Since the

**[\*8]** increased deficiency was computational and the predicate facts giving rise to the increased deficiency were stipulated by the parties, respondent has met his burden of proof to the extent of the increase in the deficiency.[5]

II.     Section 162 Deductions

A taxpayer may deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a); sec. 1.162-1(a), Income Tax Regs.  Generally, the performance of services as an employee constitutes a trade or business.  Primuth v. Commissioner, 54 T.C. 374, 377 (1970).  A business expense is "ordinary" if it is "normal, usual or customary" in the taxpayer's trade or business.  See Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. at 113).  An expense for which the taxpayer is entitled to (but does not claim) reimbursement from his or her employer generally is not considered "necessary" and thus is not deductible under section 162.  Orvis v. Commissioner, 788 F.2d

---

[5]Petitioners do not otherwise contend that the burden of proof should shift to respondent under sec. 7491(a), nor have they established that the requirements for shifting the burden of proof have been met.  Accordingly, except to the extent of the increase in the deficiency, the burden of proof remains on petitioners.  See sec. 7491(a)(2).

[*9] 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). Additionally, a taxpayer may not deduct a personal, living, or family expense unless the Internal Revenue Code expressly provides otherwise. Sec. 262(a).

Whether an expense is deductible under section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)). Under the Cohan rule, if the taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, the Court may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude is of his or her own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In order for the Court to estimate the amount of a deductible expense, there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. at 742-743. Otherwise an allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The Cohan rule, however, is superseded--that is, estimates are not permitted--for certain expenses specified in section 274, such as travel (including

**[*10]** meals and lodging), entertainment, and "listed property" (including passenger automobile and computer) expenses. Secs. 274(d), 280F(d)(4)(A)(i), (iv); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985) (flush language); see Boyd v. Commissioner, 122 T.C. 305, 320 (2004). Instead, these types of expenses are subject to strict substantiation rules. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., supra. These strict substantiation rules generally require the taxpayer to substantiate with adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense; (2) the time and place the expense was incurred; (3) the business purpose of the expense; and (4) in the case of an entertainment expense, the business relationship between the person entertained and the taxpayer. Sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). For "listed property" expenses, in addition to the time such expenses were incurred and their business purpose, the taxpayer must establish the amount of business use and the total use of such property. Id. subpara. (6)(i)(B), 50 Fed. Reg. 46016.

Substantiation by adequate records requires the taxpayer to maintain (1) an account book, diary, log, statement of expense, trip sheets, or similar record

[*11] prepared contemporaneously with the expenditure and (2) documentary evidence, such as receipts or paid bills, which together prove each element of an expenditure.  Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

A.    Schedule A Unreimbursed Employee Business Expenses

On the Schedule A attached to the joint return petitioners claimed an unreimbursed employee business expense deduction for vehicle expenses of $6,997 and meals and entertainment expenses of $1,967 of Mrs. Oatman in connection with her job as a nurse.  These types of expenses cannot be estimated because they are subject to the strict substantiation rules of section 274(d).  At trial petitioners offered no testimony (aside from making groundless constitutional arguments) or any records at all--whether it be (1) a contemporaneous account book, diary, log, statement of expense, trip sheets, similar record, or other sufficient evidence or (2) receipts, paid bills, or other sufficient evidence--to substantiate these expenses.  Furthermore, petitioners did not produce a copy of Mrs. Oatman's employer's reimbursement policy or otherwise establish that the expenses were not reimbursed by her employer.  Petitioners thus have not established that these expenses were paid or incurred or that they were ordinary

[*12] and necessary.  We sustain respondent's disallowance of the Schedule A deduction for these expenses.

### B.  Schedule C Business Expenses

On the Schedule C attached to the joint return, petitioners claimed a deduction for the following expenses for a general building contractor consulting business operated by Mr. Oatman:  car and truck expenses of $1,240; insurance of $1,381; office expense of $814; rent or lease of vehicles, machinery, and equipment of $1,680; repairs and maintenance of $1,744; supplies of $275; travel of $845; and utilities of $798.  As is the case with the unreimbursed employee business expenses, the car and truck expenses and the travel expenses cannot be estimated because they are subject to the strict substantiation rules of section 274(d).[6]  Here too, petitioners at trial offered no testimony (aside from making groundless constitutional arguments) or records or other sufficient evidence to substantiate the respective amounts of these expenses, the time and place these expenses were incurred, and the business purpose of these expenses.

---

[6]It may be that petitioners' expenses for rent or lease of vehicles, machinery, and equipment are also subject to the strict substantiation rules of sec. 274(d).  The record, however, is silent as to the particular items Mr. Oatman rented for his business.  Even if these expenses would not be subject to the sec. 274(d) strict substantiation rules, petitioners' lack of testimony and the lack of documentation regarding these expenses do not allow us to estimate their amounts pursuant to the Cohan rule.  See supra p. 9.

**[*13]** Petitioners similarly offered no testimony or any documentation, such as receipts or invoices, to substantiate the remaining Schedule C expenses. Furthermore, we cannot apply the Cohan rule as it relates to these remaining expenses because there is no foundation in the record before us to estimate the respective amounts. Petitioners thus have not established that any of the Schedule C expenses were paid or incurred or that they were ordinary and necessary. We sustain respondent's disallowance of the Schedule C net loss deduction.

III.    Section 170 Charitable Contributions

A taxpayer is allowed as a deduction any charitable contribution made during the taxable year. Sec. 170(a)(1). A charitable contribution is defined as "a contribution or gift to or for the use of" a charitable organization. Sec. 170(c). There are substantiation and recordkeeping requirements for certain charitable contributions. See sec. 170(f)(8). No charitable contribution deduction is allowed for any contribution of $250 or more unless the taxpayer substantiates the contribution with a "contemporaneous written acknowledgment" from the charitable organization. Sec. 170(f)(8)(A). For cash contributions the written acknowledgment must include: (1) the amount of cash contributed; (2) whether the organization provided any goods or services in consideration for the contribution; and (3) a description and a good-faith estimate of the value of any

[*14] goods or services provided by the organization, or if such goods and services consist solely of intangible religious benefits, a statement to that effect.[7] Sec. 170(f)(8)(B); sec. 1.170A-13(f), Income Tax Regs.  In addition, no charitable contribution deduction is generally allowed for any contribution of a cash, check, or other monetary gift unless the taxpayer maintains as a record of such contribution (1) a bank record (i.e., canceled check), (2) a written communication (i.e., receipt or letter) from the organization showing the organization's name and the date and amount of the contribution, or (3) "other reliable written records" showing the taxpayer's name, and the date and amount of the contribution.[8]  Sec. 170(f)(17); sec. 1.170A-13(a), Income Tax Regs.

Petitioners claimed a deduction totaling $7,950 for gifts by cash or check to several charitable organizations.  Respondent determined (and the parties later stipulated) that petitioners substantiated (and thus were entitled to a deduction for) charitable gifts to the Los Angeles Mission, Johnson C. Smith University, and the Eternal Promise Baptist Church totaling $3,660.  Respondent determined that

---

[7]Sec. 170(f)(8)(D) provides an exception to the contemporaneous written acknowledgment requirement.  Petitioners do not assert that this exception applies.

[8]Sec. 1.170A-13(a)(2), Income Tax Regs., provides rules governing the reliability of other written records.

[*15] petitioners were not entitled to a charitable contribution deduction for the remaining amount, $4,290, because of lack of substantiation.  Mr. Oatman testified that all of his charitable endeavors with the Los Angeles Mission were documented and that he and Mrs. Oatman "make a lot of cash contributions all over town, all throughout the year".  Mr. Oatman also acknowledged that much of his involvement with and support of Johnson C. Smith University and the Eternal Promise Baptist Church, where he serves in several officer positions, is "not reflected on paper", but he stated that he believed the Cohan rule applied.

On a number of occasions, this Court has used the Cohan rule to estimate (and thus allow a partial deduction for) unverified or inadequately substantiated charitable contributions.  See Kendrix v. Commissioner, T.C. Memo. 2006-9, slip op. at 21-23 (and cases cited thereat); Wren v. Commissioner, T.C. Memo. 1984-456, 1984 Tax Ct. Memo LEXIS 215, at *7-*8; cf. Hooks v. Commissioner, T.C. Memo. 1993-437, 1993 Tax Ct. Memo LEXIS 446, at *3-*4.  However, all the cases where we did so involved taxable years before 2006 and the enactment in 2006 of the Pension Protection Act.  With respect to cash contributions of less than $250 made since 2006, as indicated above, a bank record or written communication is required pursuant to section 170(f)(17).  See Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 1217(a), 120 Stat. at 1080 (adding section

[*16] 170(f)(17) to the Internal Revenue Code). And with respect to any contributions of $250 or more, the requirement for a contemporaneous written acknowledgment, as indicated above, is viewed as strict. See French v. Commissioner, T.C. Memo. 2016-53; Villareale v. Commissioner, T.C. Memo. 2013-74.

Although the parties stipulated that petitioners substantiated a portion of their reported charitable cash contributions for the 2011 taxable year, petitioners have merely provided testimony and not any additional documentation to substantiate the remaining charitable contributions. This testimony is insufficient to allow an additional charitable contribution deduction beyond what respondent has already allowed. We sustain respondent's determination that petitioners are allowed a Schedule A charitable contribution deduction of $3,660.

IV.    Section 469 Passive Activity Losses

In addition to being allowed deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business under section 162, a taxpayer is allowed deductions for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income. See sec. 212. Where the taxpayer is an individual, however, section 469 generally disallows any passive activity loss for the taxable year and treats it

**[*17]** as a deduction allocable to the same activity for the next taxable year. Sec. 469(a) and (b). A "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity generally is any activity involving the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity is treated as a per se passive activity, regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4).

As relevant here, one exception to the section 469 general disallowance rule for rental real estate activities is provided in section 469(i). Section 469(i) allows as a deduction the portion of the passive activity loss that is attributable to all rental real estate activities with respect to which the taxpayer actively participated during the taxable year. Sec. 469(i)(1). In that instance, the taxpayer may deduct up to $25,000 of the passive activity loss, which is reduced (but not below zero) by 50% of the amount by which the taxpayer's adjusted gross income exceeds $100,000 for the taxable year. Sec. 469(i)(2) and (3). The active participation requirement is met so long as the taxpayer has participated significantly and in a bona fide way with respect to management decisions (such as approving new tenants or repairs or deciding on rental terms) or arrangements for others to

**[\*18]** provide services (such as repairs). See Moss v. Commissioner, 135 T.C. 365, 371 (2010); Madler v. Commissioner, T.C. Memo. 1998-112. Thus, unlike the material participation requirement, the active participation requirement can be satisfied without regular, continuous, and substantial involvement in operations. See Madler v. Commissioner, T.C. Memo. 1998-112.

The parties stipulated that petitioners actively participated in their rental real estate activity during 2011. In his amended answer respondent asserted (and the parties later stipulated) that petitioners' adjusted gross income was $138,452 (and not $114,802 as reported on the joint return). As a result, petitioners' claimed deduction for a rental real estate loss of $24,473 on their Schedule E should be limited to $5,774, representing the application of the phaseout of the loss limitation under section 469(i)(3)(A).[9] At trial petitioners offered no testimony (aside from making groundless constitutional arguments) or any other evidence contesting their entitlement to a limited Schedule E rental real estate loss deduction of $5,774 or to support the position that they have met any other exception under section 469 that would permit them to deduct the entire amount of

---

[9]The asserted deductible amount of $5,774 was calculated by subtracting $19,226 (multiplying 50% by the difference between $138,452 and $100,000) from $25,000 (the sec. 469(i)(1) dollar loss limitation). See sec. 469(i)(1), (2), and (3).

[*19] their claimed Schedule E rental real estate loss. We sustain respondent's determination, as asserted in his amended answer, that petitioners are allowed a Schedule E rental real estate loss deduction of $5,774.

V.     Section 6662(a) Accuracy-Related Penalty

Finally, we consider whether petitioners are liable for the section 6662(a) accuracy-related penalty.

Various grounds for the imposition of this penalty are set forth in the notice of deficiency although only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one ground. Sec. 1.6662-2(c), Income Tax Regs. We need only address respondent's claim that petitioners are liable for the section 6662(a) accuracy-related penalty on the ground that petitioners' underpayment of tax for 2011 was attributable to a substantial understatement of income tax under section 6662(b)(2). For purposes of section 6662(b)(2), an understatement generally means the excess of the amount of tax required to be reported on the return over the amount shown on the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return for that taxable year or $5,000. Sec. 6662(d)(1)(A). Respondent has

[*20] provided sufficient evidence showing that petitioners' understatement of income tax for 2011 exceeds the greater of 10% of the tax that was required to be shown on the joint return or $5,000.[10]

Application of the accuracy-related penalty may be avoided with respect to any portion of an underpayment if the taxpayer shows that he acted in good faith with respect to such portion and that there is reasonable cause for such portion. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447. The determination of whether there is reasonable cause and the taxpayer acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. We consider, among other factors, the experience, education, and sophistication of the taxpayer; however, the principal consideration is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see Higbee v. Commissioner, 116 T.C. at 448.

At trial petitioners did not offer any evidence as to the application of the accuracy-related penalty, including that they had reasonable cause and acted in

---

[10]Respondent also demonstrated that petitioners acted negligently for 2011 because the record before us clearly shows, see supra pp. 11-13, 15-16, 18-19, that petitioners failed to keep accurate records to substantiate their claimed deductions, see sec. 1.6662-3(b)(1), Income Tax Regs. (providing that negligence includes any failure by a taxpayer to keep adequate books and records or to substantiate items properly).

**[\*21]** good faith.  Moreover, because petitioners did not challenge the accuracy-related penalty by assigning error to it in their petition, we deem this issue conceded.  See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358 (2002).  We sustain respondent's determination regarding the accuracy-related penalty.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.